Argued November 7, 1973, reversed March 7, petition for
rehearing denied April 23, 1974

WEYERHAEUSER COMPANY, *Plaintiff, v.*
LYNCH, *Respondent,* AND BACK &
STERLING, INC., *Appellant.*

520 P2d 351

*Boyd J. Long,* Portland, argued the cause for ap-

pellant. With him on the briefs were George J. Cooper, III, and Morrison, Bailey, Dunn, Cohen & Miller, Portland.

*John F. Reynolds,* Portland, argued the cause for respondent. With him on the brief were McCormick & Reynolds, Portland.

Before O'CONNELL,* Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

BRYSON, J.

Plaintiff Weyerhaeuser Company, the interpleader, paid to the court a sum of money, approximately $12,000. Both Lynch and Back & Sterling, Inc., claim they are entitled to the money. Back & Sterling appeals from the trial court's judgment that Lynch is entitled to the fund.

There appears to be no dispute on the material facts, but the parties differ as to the rights of the parties on the facts. Weyerhaeuser Company and Communications for Business, Inc. (hereinafter C.B.I.) entered into a contract on April 12, 1971, under which C.B.I. would furnish certain marketing sales forecasts and information to Weyerhaeuser. In August, 1971, before the contract was completed, C.B.I. assigned the contract and the obligation to perform the contract to Back & Sterling. They also granted an alleged security interest in any amount payable under the contract to Back & Sterling. Back & Sterling notified Weyerhaeuser of the assignment on September 27, 1971, and completed the contract on December 23, 1971.

Defendant Lynch was employed by C.B.I. to solicit

---

* O'Connell, Chief Justice, did not participate in the decision of this case.

customers to whom C.B.I. could furnish marketing information. Lynch was to receive as his commission 20 percent of the gross billing on marketing information contracts which he procured for C.B.I.

Claiming that he was entitled to a commission for procuring the Weyerhaeuser contract, Lynch filed an action against C.B.I. on October 22, 1971, and served Weyerhaeuser with a writ of attachment and notice of garnishment on October 26, 1971. Weyerhaeuser Company's return on the garnishment stated, "No funds due and owing at this time." The contract had not been fully performed.

Lynch states that "[o]ne half of the total price of $48,980 [$44,200] was paid in advance and the balance was to be paid when performance was completed, which was to be by July 19, 1971."

Any funds realized by either party in the present action are derived from money due under the Weyerhaeuser contract. Therefore, it is important to understand the contract under which Weyerhaeuser agreed to pay the balance of the contract price, $22,100. Paragraph X of the contract provides:

"X. Work Plan and performance clause
"* * * * *.

"B. A two-week grace period will be allowed by Weyerhaeuser in excess of the three-months' study completion data (study initiation date is that date CBI provides written acceptance of this clause). At the end of this two-week grace period, if the report is not completed and delivered, it will be considered delinquent. Each month it is delinquent (or proportionate period of a month) CBI will be subject to a penalty of 10% of the original contract price. If this contract is delinquent in excess of two months, this contract can be cancelled by Weyer-

haeuser at their option by giving written notice. If this contract is cancelled, any monies previously paid by Weyerhaeuser on this contract must be returned. This contract will be considered complete when all computer tapes and runs, and other schedules outlined in this contract have been delivered."

C.B.I. was indebted to Back & Sterling. Back & Sterling accepted the assignment of the Weyerhaeuser contract, the funds payable under it, and the obligation to perform the contract for Weyerhaeuser, which C.B.I. was unable to do. The evidence shows that the contract was not performed by C.B.I. by July 19, 1971, and was delinquent. Weyerhaeuser asserted the above penalty provision of the contract and did not pay the balance of $22,100, but only the sum of approximately $12,000. If Back & Sterling had not performed the contract which it completed on December 23, 1971, there would have been no funds due by Weyerhauser. Lynch's brief admits that "[a]s of October 29, 1971 some further performance was still required."

Weyerhaeuser Company commenced this interpleader action to permit the court to resolve these conflicting claims to the proceeds of the contract. The trial court found that at the time of the garnishment by Lynch there was an indebtedness subject to garnishment and that Back & Sterling did not have a perfected security interest in the indebtedness. On appeal, Back & Sterling asserts two principal assignments of error:

"The trial court erred in finding that at the time of service of the notice of garnishment by Duke Lynch upon Weyerhaeuser Company there was an indebtedness subject to garnishment."

"The trial court erred in finding that at the time of the service of the notice of garnishment by Duke Lynch upon Weyerhaeuser Company that

Back & Sterling, Inc. did not have a perfected security interest [①] in any indebtedness which might be subject to garnishment."

■ ■ The law is well settled in Oregon that a garnishing creditor takes only such rights or interest as his debtor had at the time the notice of garnishment was served. *Scheuerman v. Mathison,* 74 Or 40, 144 P 1177 (1914). A garnishing creditor can stand in no better position than the debtor and garnishees are held only for clearly ascertainable debts owing at the time of service of the notice. A garnishment may be ineffective if the property or credits to which it is directed already have been assigned by the debtor (C.B.I.). "After notice of such an assignment is brought home to the debtor [Weyerhaeuser], the debt is not subject to gar-

---

① We reserve opinion but question if the transfer of the contract from C.B.I. to Back & Sterling could be properly termed a security transaction under Oregon statutes. ORS 79.1040 (6) excludes from the coverage of secured transactions statutes a "transfer of a contract right to an assignee who is also to do the performance under the contract * * *." In this case it is clear that C.B.I. transferred not only its rights but also its duties under the Weyerhaeuser contract. Where there has been an assignment of an intangible contract right as well as a delegation of duties to the transferee, the official comment to this section of the Uniform Commercial Code states that the transaction is excluded from the coverage of the Code because that section has "nothing to do with commercial financing transactions." 3 Uniform Laws Annotated, Uniform Commercial Code § 9-104 (f), Comment 6 (1968). *Accord,* Oregon Revised Statutes 1963, Uniform Commercial Code, Comment 5, page 349.

Note: ORS 79.1040 (6) was amended by Chapter 504, Oregon Laws 1973, to read as follows:

"(6) To a sale of accounts [, *contract rights*] or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts [, *contract rights*] or chattel paper which is for the purpose of collection only, or a transfer of a [*contract*] right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a pre-existing indebtedness; * * *."

ORS 79.1050 (1) (c), (d) were also amended accordingly.

nishment by creditors of the assignor." *Morris v. Leach,* 82 Or 509, 511, 162 P 253, 254 (1917). *See also, Meier v. Hess,* 23 Or 599, 32 P 755 (1893).⊕

■ Accordingly, we conclude that defendant Lynch's garnishment was ineffective and Weyerhaeuser's return on the notice of garnishment that no funds were due and owing to C.B.I. was correct. For these reasons it is unnecessary to consider Back & Sterling's further contention that it possessed a perfected security interest in the C.B.I. account receivable on the Weyerhaeuser contract.

Reversed.

---

⊕ The opinions of courts in other states are in accord with these rules. *See* First Nat. Bank of Ashford v. Gaines, 27 Ala App 191, 168 So 702 (1936); Reeb v. Interchange Resources, Inc. of Phoenix, 106 Ariz 458, 478 P2d 82 (1971); Estate of Bennett, 13 Cal 2d 354, 90 P2d 84, 126 ALR 771 (1939); Ciezynski v. New Britain Transportation Co., 121 Conn 36, 182 A 661 (1936); Nelson v. Boula, 207 Kan 771, 486 P2d 1340 (1971); Southwestern Bell Tel. Co. v. Crown Insurance Co., 416 SW2d 705 (Mo App 1967); Sperry v. Renner, 194 Okla 285, 149 P2d 781 (1944); Guar. Tr. Co. of Mt. Carmel v. Tye et al, 129 Pa Super 481, 196 A 618 (1938).